UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                                          Crim. No. 23-1483 MLG

**SERAPHINE WARREN-BEGAY**, a.k.a.
"Seraphine Warren," **ORLANDO
BEGAY**, **NELTON ALEX BEKAY**, and
**JOSEPHINE BEKAY**,

    Defendants.

### UNITED STATES' MOTION TO DETAIN DEFENDANT JOSEPHINE BEKAY

**I.   BACKGROUND**

   **A. The Relevant Conduct**

*1) Defendants Investigate John Doe*

This story stems from an alleged car theft and a disregard for the social compact. On March 28, 2021, Defendant Seraphine Warren-Begay ("Seraphine") reported to the Farmington Police Department that her 2005 Chevy Silverado was stolen from the Brentwood Inn in Farmington, New Mexico. Seraphine and her husband, Defendant Orlando Begay ("Orlando"), both from Utah, were visiting a friend in Farmington, which is why they were residing at the hotel.

Instead of waiting for law enforcement to investigate the theft, Seraphine turned to Facebook and local gossip for answers. Among the many posts, tips, and conversations about the truck, Seraphine began identifying suspects that she believed perpetrated the theft. Eventually, based on gossip, hearsay and contradicting eyewitness accounts of a matching truck roaming the Shiprock area, Seraphine set her sights on John Doe. Armed with an amateur Facebook investigation, and with information obtained from friends and family, Seraphine, along with

Orlando, and assisted by her sister, Defendant Josephine Bekay ("Josephine"), and her sister's husband, Defendant Nelton Alex Bekay ("Nelton"), decided to confront John Doe at his home in Arizona. That is, the Defendants conspired to take justice into their own hands.

Though, the confrontation did not immediately occur. Seraphine and Orlando first returned home to Utah, likely to continue the homegrown investigation. While there, Seraphine received Facebook messages regarding John Doe and a red truck that matched the missing vehicle. In response, Seraphine and Orlando traveled in a black Nissan Pathfinder to Red Valley, Arizona to survey the area and locate John Doe.

Seraphine and Orlando initially refrained from confronting John Doe, instead opting to search the surrounding area for the truck. While they searched in Arizona, Josephine and Nelton hunted on the New Mexico side of the border, scouring unsuccessfully the Shiprock area for the truck. With both teams striking out, Seraphine directed Josephine and Nelton to drive to Red Valley, Arizona to meet up. Nelton and Josephine complied and drove in a black Ram four door truck to Arizona. But they did not come empty handed: Josephine brought handcuffs, pepper spray, a metal police baton, and a black Glock 9mm handgun to the meetup. Josephine even admitted to test-firing the gun in a secluded area near Beclabito, New Mexico before the they left for Arizona.

With everyone together, the group traveled to the area previously identified to them as John Doe's family compound.

2) *Defendants Confront John Doe*

Once the group arrived at the compound, which consisted of multiple hogans/residences, Seraphine, Josephine, Nelton, and Orlando approached what appeared to be the main house of the lot, where Seraphine attempted entry. However, as the group immediately found out, the main

building was not John Doe's house. It instead belonged to a relative of John Doe, who lived there with his two sons. Though attempting to breach the wrong house did not deter the group, as Seraphine used threats to successfully elicit from the relative that John Doe lived in a hogan just across the property. With this information, Seraphine continued to the hogan, while Josephine entered the relative's residence and without provocation peppered sprayed everyone inside. Josephine then used her metal police baton to break out the windows before continuing to the hogan with Seraphine.

Finally, once at the hogan, Seraphine, Josephine, and Orlando breached the door and went straight for an unsuspecting John Doe who laid inside. Nelton remained outside to guard the two vehicles. According to Seraphine, John Doe started to get up once they were inside, so she "hit him over the head" with a blunt force object as Orlando and Josephine shot him with paintball guns. Seraphine then directed a blood and paint covered John Doe to get outside. There, the group handcuffed John Doe.[1]

3) *Defendants Kidnap John Doe*

After the group handcuffed John Doe and secured him in Josephine and Nelton's Ram truck, which was chosen as the transport vehicle due to its tinted windows, they drove him around the Navajo reservation, eventually crossing over into New Mexico. Seraphine and Orlando followed in the black Nissan Pathfinder. They forced John Doe to assist in the search while handcuffed, bleeding, and covered in paint.

---

[1] Joe Doe stated that he initially believed that the Defendants were law enforcement officers based on their actions.

### 4) *Defendants Release John Doe*

After approximately 6-8 hours of searching, the group decided to drop John Doe off at the San Juan County Adult Detention Center. A Deputy from the San Juan County Sheriff's office met the group upon arrival, determined that John Doe needed immediate medical attention, and called for an ambulance. John Doe was then transported to the San Juan Regional Medical Center for the injuries that he sustained during the kidnapping.

### B. The Charges

The United States charged Defendants in a two-count indictment with: (1) Kidnapping in violation of 18 U.S.C. § 1201(a)(1) and (2) Conspiracy to Commit Kidnapping in violation of 18 U.S.C. § 1201(c).[2]

## II.   ARGUMENT

### A. The Government is Entitled to a Detention Hearing

The Bail Reform Act "establishes a two-step process for detaining an individual before trial." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (per curiam). At step one, the court must decide the threshold question of whether 18 U.S.C. § 3142(f) authorizes detention. Among the many avenues under that section is the express authorization to seek pre-trial detention when a defendant is charged with a felony for which the maximum sentence is life. § 3142(f)(1)(B).[3] Both counts of the indictment feature a maximum penalty of life imprisonment. *See* 18 U.S.C. §§ 1201(a) and (c) (any term of years or for life).

---

[2] Defendants also are charged in Count 1 with aiding and abetting in violation of 18 U.S.C. § 2.
[3] The Government also notes that a detention hearing is authorized under §§ 3142(f)(1)(A) and (E). First, kidnapping is a felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." See 18 U.S.C. § 3156(a)(4)(B) (definition of crime of violence for detention purposes). Second, the Defendants used in commission of the charged conduct several dangerous weapons, including paintball guns, a metal baton, and a 9mm handgun.

**B. The Factors Favor Detention.**

At the outset, the United States acknowledges that the charges stem from 2021. The delay in prosecuting this matter is unacceptable. However, the delay does not forgive the above conduct or minimize the seriousness of the offense. Nor does the delay significantly alter the § 3142(g) factors enough to warrant release.

Turning to the detention statute, although this is not a presumption case, the factors still favor detention of all Defendants. In determining whether conditions of release can be fashioned, the court must consider the following factors: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, including ties to the community, employment, financial resources, criminal history, history of alcohol or substance abuse, and record concerning appearance at court proceedings, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. § 3142(g)(1) – (4). The factors weigh in favor of detaining Defendant Nelton Alex Bekay for the reasons that follow.

*1) The Nature and Circumstances of the offense*

Section 3142(g)(1) instructs the Court to consider whether the offense is a "crime of violence." § 3142(g)(1). A "crime of violence" encompasses any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See* 18 U.S.C. § 3156(a)(4)(B). With this broad definition, kidnapping qualifies given that restraint and physical force are most if not always one and the same. Kidnapping is a crime of violence for purposes of the detention statute.

Turning to the nature and circumstances in this matter, Nelton and Josephine brought several tools to planned kidnapping that elevated the dangerousness of the offense, including a Glock 9mm handgun. Indeed, on their way to Arizona, the two stopped so that Josephine could test-fire the gun. Worse still, Nelton was the lookout man when they first captured John Doe. That is, he guarded the vehicles while his wife, Josephine, assaulted with pepper spray an unsuspecting family and then destroyed their house with a metal baton before she even confronted John Doe. Nelton then continued to play backstop while Seraphine, Josephine, and Orlando breached John Doe's house. And after the group handcuffed John Doe and secured him in the truck, Nelton rode in the backseat to make sure that John Doe complied with commands. His actions are just as bad as if he breached the house himself.

This factor weighs in favor of detention.

*2) The Weight of the Evidence*

The weight of the evidence is overwhelming. Every Defendant admitted to the conduct above, albeit in various versions. And they all admitted to the conduct twice: (1) Defendants confessed to law enforcement immediately after releasing John Doe in Farmington and (2) Defendants confessed to the FBI days after the incident. But admissions aside, the group took several photographs of John Doe during the offense conduct as well as recorded a 90-second clip, which features a bloody and paint covered John Doe handcuffed in the back of Josephine's vehicle. The evidence continues: law enforcement located during consent searches of the vehicles the paintball guns used during the kidnapping, the 9mm handgun, the metal baton, the pepper spray, and the handcuffs. Finally, in addition to this hard evidence, John Doe corroborated the kidnapping.

This factor favors detention.

*3) History and Characteristics*

At the time of this motion, a bail report has not been completed. Nonetheless, based on the Government's investigation, Nelton does not appear to have any relevant criminal history. Accordingly, this factor weighs in favor of Nelton.

*4) Dangerousness and Risk of Flight*

The overwhelming evidence clearly demonstrates that Nelton poses a specific risk to the Navajo Nation. He further represents a significant danger to the community at large. For example, Nelton watched several unprovoked assaults with approval, acted as look out during those assaults, and then assisted in keeping John Doe compliant during the kidnapping. These are dangerous actions, especially given that they were taken in response to an amateur Facebook investigation.

As for flight, Nelton is an out of state resident, thus he has no incentive to remain within the District of New Mexico. Nor does he have an incentive to remain anywhere given that he has never spent any significant time in custody, let alone the time a cursory review of the United States Sentencing Guidelines prescribe for the instant offenses. *See* USSG § 2A4.1(a).

This factor weighs in favor of detention.

## III. CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court order Defendant Nelton Alex Bekay be detained pending trial.

    Respectfully submitted,

    ALEXANDER M.M. UBALLEZ
    UNITED STATES ATTORNEY

    *Electronically Filed 10/25/2023*
    MATTHEW J. MCGINLEY
    Assistant United States Attorney
    P.O Box 607
    Albuquerque, NM 87103

I HEREBY CERTIFY that I have
electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system
which will send notification to opposing
counsel of record
on this date.
***Electronically Filed 10/25/2023***
MATTHEW J. MCGINLEY
Assistant United States Attorney