## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**                               **No. 1:23-cr-1483-MLG**

**SERAPHINE WARREN-BEGAY, et al.**

       **Defendants.**

### JOINT NOTICE OF *BRADY* REQUEST AND MOTION TO COMPEL DISCOVERY

Defendant Seraphine Warren-Begay, through counsel, Ryan J. Villa and Justine Fox-Young, joined by Josephine Bekay, through counsel Marc. H. Robert, Nelton Alex Bekay, through counsel Ahmad Assed, and Orlando Begay, through counsel Susan L. Burgess-Farrell, pursuant to Rule 16 of the Federal Rules of Criminal Procedure, this Court's Discovery Orders, *see* Orders [Docs. 27, 29, 48, 72], *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S.150 (1972), moves the Court for an order compelling the production of discovery related to alleged victim Brian Levi's federal prosecution for carjacking resulting in serious bodily injury, in violation of 18 U.S.C. § 2119, as charged in *United States v. Levi et al.*, 22-cr-01910-JB.

## I.   RELEVANT BACKGROUND

### *The Alleged Kidnapping of Career Criminal Brian Levi*

Sisters Seraphine Warren-Begay and Josephine Bekay, along with their husbands, Orlando Begay and Nelton Alex Bekay are charged in an Indictment with kidnapping Brian Levi in violation of 18 U.S.C. 1201(a)(1) and conspiracy to commit kidnapping, in violation of 18 U.S.C. 1201(c). *See* Indictment [Doc. 38]. These charges stem from Brian Levi's theft of Seraphine's truck from a hotel parking lot in Farmington, New Mexico, on March 26, 2021, and her efforts to recover the stolen vehicle.

Less than a year before Brian Levi stole Seraphine's truck, he and his brother, Daryl Levi, carjacked John Doe for his Ford Focus in front of a restaurant in Shiprock, New Mexico. *See U.S. v. Levi*, 22-cr-01910-JB Indictment [Doc. 2] (indicating offense occurred on May 17, 2020); Defendant's Notice and Motion to Admit Rule 404 Evidence [Doc. 39]. The carjacking was reported to law enforcement, and on November 23, 2022, Brian Levi and his brother were indicted by a federal grand jury with carjacking resulting in serious bodily injury and aiding and abetting in violation of 18 U.S.C. §§2119 and 2. *See U.S. v. Levi*, 22-cr-01910-JB Indictment [Doc. 2].

If convicted of the charges, Brian Levi faced a maximum sentence of 25 years imprisonment. *See* § 2119(2). Given his known criminal history, which included convictions for felony child abuse, burglary of a vehicle, and felony aggravated fleeing a law enforcement officer, his criminal history calculation would be significant under the Federal Sentencing Guidelines. *See U.S. v. Levi*, 22-cr-01910-JB United States' Notice of Intent to Use Evidence Pursuant to Rule 609 of the Federal Rules of Evidence [Doc. 41]; *see also* U.S.S.G. §4A1.1 (providing rubric for criminal history computations). Of course, in addition to calculating the criminal history category, the defendant's criminal history bears on other factors for purposes of calculating the guideline range, such as relevant conduct and offense specific factors. This information is relevant to determine Brian Levi's credibility and understanding of benefits that were conferred on him for testifying before the grand jury. *See* U.S.S.G. Ch. 5 Pt. A Sentencing Table.

At his arraignment on June 22, 2023, the government moved for Brian Levi's detention pending trial and successfully established no condition or combination of conditions of release would "reasonably assure the safety of any other person and the community" or "the defendant's appearance as required." *See U.S. v. Levi*, 22-cr-01910-JB Order of Detention Pending Trial [Doc. 18]. As a result, Brian Levi was detained on the government's motion pending trial. *See U.S. v.*

*Levi*, 22-cr-01910-JB Docket Sheet (indicating arrest on June 23, 2023); Order to Continue Trial Setting and Pretrial Deadlines [Doc. 35] (rescheduling trial for February 20, 2024).

Two and a half months after the entry of his detention order, on September 6, 2023, Brian Levi testified before a federal grand jury about his alleged kidnapping by sisters Seraphine and Josephine and their husbands. Five months later, the government moved to dismiss the carjacking indictment against Brian Levi without prejudice, citing "recent developments" and the unavailability of Daryl Levi for trial undermining its ability to meet its burden of proof as to the carjacking charge. *See U.S. v. Levi*, 22-cr-01910-JB United States Unopposed Motion to Dismiss Indictment [Doc. 53]. On February 5, 2024, Judge Browning entered the order dismissing Brian Levi's indictment and ordered his release from federal custody. *See U.S. v. Levi*, 22-cr-01910-JB Order Dismissing Indictment [Doc. 54].

### *Defense Counsels' Request for Brian Levi's Criminal Discovery*

On February 19, 2024, defense counsel requested the discovery in Brian Levi's carjacking case from the government as this discovery likely contains Rule 16 and *Brady* and *Giglio* materials. *See* **Exhibit 1**, Email to AUSA McGinley 2/19/24. The government denied the request without explanation. *See id.* Defense counsel provided the government with a draft of the instant motion, and the government indicated it needed to time review Brian Levi's criminal discovery as it had not previously reviewed the file. As a result, the parties agreed to a two-week extension of the Rule 16 discovery deadline. *See* Joint Motion to Extend Rule 16 Discovery Motions Deadline [Doc. 82], Order [Doc. 83]. Since then, the government has apparently completed its review and indicated it would not be producing Brian Levi's criminal discovery to the defense but would produce certified copies his state court pleadings (which defense counsel first obtained and provided to the government), and his state corrections department file. *See* **Exhibit 2**, Email to

AUSA McGinley 3/15/24. The government also suggested that this Court should conduct an *in camera* review of the discovery file. *Id*.

Accordingly, counsel for Seraphine Warren-Begay, Josephine Bekay, Orlando Begay, and Nelton Alex Bekay ("Defendants") jointly request that the Court compel the government to immediately review and disclose all Rule 16 and *Brady* and *Giglio* materials contained in Brian Levi's criminal discovery or otherwise in the possession of the United States. Defense Counsel anticipate that Brian Levi's criminal discovery contains evidence that will be admissible under Federal Rules of Evidence 404(a) and (b) or that will directly assist in the discovery of evidence that will be admissible under these rules at trial.

## II.     THE LAW ON THE GOVERNMENT'S DUTY TO PRODUCE DISCOVERY

"During a criminal prosecution, the Federal Rules of Criminal Procedure and the Constitution require the United States to disclose certain evidence to a criminal defendant." *United States v. DeLeon,* 428 F. Supp. 3d 716, 755 (J. Browning) (D.N.M. 2019). "Rule 16 of the Federal Rules of Criminal Procedure is one source that imposes such a duty on the United States" and the "Due Process Clause of the United States Constitution is another source imposing a duty to disclose on the United States." *Id*. Taken together, this provides a legal framework for the production of discovery that helps effectuate a defendant's right to due process. After all, the defendant at the center of "a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may lose his liberty upon conviction and because of the certainty that he would be stigmatized by the conviction." *In re Winship*, 397 U.S. 358, 363 (1970).

In *Brady*, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373

U.S. at 87, 83 S.Ct. 1194. "In *Giglio*, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory." *United States v. DeLeon,* 428 F. Supp. 3d 716, 755 (J. Browning) (D.N.M. 2019) (citing *Giglio*, 405 U.S. at 153). Over time, "the Supreme Court has refined *Brady* and clarified that it is not necessary that a defendant request exculpatory evidence" as "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (internal quotations omitted).

**A. The Government Is Obligated to Produce Rule 16 Materials.**

Rule 16 of the Federal Rules of Criminal Procedure imposes a duty on the government to produce documents and objects that are material to the preparation of the defense of the accused or will be used as part of the government's case-in-chief at trial. *See* Fed. R. Crim. Pro. 16(a)(1)(E). Evidence is "material" under Rule 16 if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation . . . or assisting impeachment or rebuttal." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks omitted) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (internal quotation marks omitted). The materiality standard is not a heavy burden, and the government must disclose Rule 16 material if it could enable a defendant to alter the quantum of proof in their favor. *Graham*, 83 F.3d at 1474. Importantly, Rule 16(d)(2) "gives the district court broad discretion in imposing sanctions on a party who fails to comply with" Rule 16. *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988).

**B. The Government Is Further Obliged to Produce Evidence Under *Brady*.**

The Due Process Clause of the Constitution requires that the government disclose to Defendants any evidence that "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. In *Giglio*, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. *See* 405 U.S. 150, 153 (1972); *Douglas v. Workman*, 560 F.3d 1156, 1172-73 (10th Cir. 2009) ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [government's] witnesses by showing bias and interest.'") (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

**1. The Government Must Produce Evidence That Is Favorable and Material.**

Under *Brady,* the government must produce evidence that is favorable to the accused and "material either to guilt or to punishment." *Brady*, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. at 682. *See United States v. Allen*, 603 F.3d 1202, 1215 (10th Cir. 2010). A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. at 682 (internal quotation marks omitted). The Tenth Circuit notes that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard," *United States v. Fleming*, 19 F.3d 1325, 1331, and that evidence only becomes material where it "might meaningfully alter a defendant's choices before and during trial . . . including whether the defendant should testify," *Case v. Hatch*, 731 F.3d 1015 (10th Cir. 2013) (quoting *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009)) (internal quotation marks omitted). *Brady* also

requires that "[a] prosecutor must disclose information of which it has knowledge and access." *United States v. Padilla*, 2011 WL 1103876, at *7 (citing *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989)). "A prosecutor may have a duty to search files maintained by other 'governmental agencies closely aligned with the prosecution' when there is 'some reasonable prospect or notice of finding exculpatory evidence.'" *United States v. Padilla*, 2011 WL 1103876, at *7 (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). Further, "prosecutors are presumed to recognize the significance of evidence" and "cannot hide behind a court's discovery order to suppress exculpatory evidence." *United States v. Bundy*, 968 F.3d 1019, 1039 (9th Cir. 2020) (cleaned up) (affirming the district court's decision to dismiss the indictment with prejudice as sanction for government's Brady violations pursuant to its supervisory powers).

2.   **The Government Has an <u>Affirmative</u> Duty to Produce Exculpatory Evidence.**

The government has an affirmative duty to produce exculpatory material regardless of whether the defendant notifies them that such materials exist. *See Kyles*, 514 U.S. at 437 (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached"). Under this affirmative duty, the government must "volunteer exculpatory evidence never requested, or requested only in a general way." *Kyles*, 514 U.S. at 433 (internal quotation marks omitted). Additionally, "[u]nder *Brady*, the good or bad faith of government agents is irrelevant." *United States v. Quintana*, 673 F.2d 296, 299 (10th Cir. 1982). "This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence." *Kyles*, 514 U.S. at 439. Furthermore, "a prosecutor's office cannot get around

*Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case." *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984).

**3.  The Government Must Disclose Impeachment Evidence and Evidence that Provides Important Investigative Leads.**

In *Brady*, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In *Giglio*, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. 405 U.S. at 153-54. Finally, the Supreme Court refined *Brady* and clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles,* 514 U.S. at 433.

Evidence favorable to the accused includes exculpatory evidence, other information that provides important investigative leads, and impeachment evidence. *See Banks v. Reynolds,* 54 F.3d 1508, 1517, n. 18 (10th Cir. 1995); *Smith v. Secretary of New Mexico Dept. of Corrections*, 50 F.3d 801, 829 (10th Cir. 1995) (information providing investigative leads); *United States v. Bagley*, 473 U.S. 667, 676 (1985) (impeachment evidence). Failure to disclose impeachment evidence violates *Brady* when a witness's credibility is material to the question of guilt. *United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989). Ultimately, the policy animating *Brady* is the desire to ensure a fair trial and a verdict worthy of confidence. *Kyles*, 514 U.S. at 434.

While *Brady* concerns exculpatory evidence and *Giglio* deals with impeachment evidence, the United States Supreme Court has flatly rejected drawing distinctions between the two. *See*

*United States v. Bagley*, 473 U.S. at 676 ("This Court has rejected any such distinction between impeachment evidence and exculpatory evidence."); *see also United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1197 (C.D. Cal. 1999) ("*Giglio* is a subcategory of *Brady*"). This means disclosure of all *Brady* material, including *Giglio* impeachment material, is governed by the same legal principle: evidence favorable to a defendant must be disclosed in time for its effective use at trial. *United States v. Beckford*, 962 F. Supp. 780, 788 (E.D. Va. 1997); *LaMere v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987) (Due process requires "that disclosure of exculpatory material be made in sufficient time to permit [the] defendant to make effective use of that material.").

**C.  The Government Must Produce Evidence Subject to Disclosure Under the Due Process Protections Act.**

"The Due Process Protections Act amended the federal rules of criminal procedure to require district courts to issue, at the outset of every criminal case, an order confirming the prosecutor's disclosure obligations under *Brady v. Maryland*, and the consequences for violating the order." Brian M. Heberlig, et al., *The Due Process Protections Act: A New Opportunity for Defense Counsel to Advocate for Broad and Meaningful Brady Orders in Criminal Cases* (January 27, 2021). The Act "reminds the Government of its obligation to *timely* disclose information favorable to the defense as to criminal liability on the charged offenses or mitigation of any punishment that may be imposed." *United States v. Williams*, 2021 WL 2681279, at *3 (E.D. Pa. June 30, 2021) (emphasis added). "Such favorable information includes information that may cast doubt on the credibility of government witnesses. Possible consequences for violating this order include exclusion of evidence, dismissal of charges, contempt proceedings, disciplinary referral, and any other relief authorized by law." *Id*.

**D.  The Government Must Produce Evidence *When* It Can Be Utilized by the Defense.**

The production of *Brady* and *Giglio* material should occur before trial, *United States v. Nagra*, 147 F.3d 875, 881 (9th Cir. 1998), and at a time when it would be of value to the accused. *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991). This is because, most of the time, the pretrial production of such information is necessary for the accused to realize his right to a fair trial. *See United States v. Acosta*, 357 F. Supp. 2d 1228, 1243 (D. Nev. 2005) (explaining that "*Brady* and its progeny are based on a defendant's due process rights to a fair trial"). For example, timely disclosure allows trial counsel the opportunity to prepare effective cross-examinations of adverse witnesses. *See Hoffa v. United States*, 385 U.S. 293, 311-12 (1966) ("The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury."). Further, the prosecution has an ethical duty to timely produce exculpatory evidence. *See Acosta*, 357 F. Supp. 2d at 1246 (explaining that the Nevada Rules of Professional Conduct provide that the prosecutor in a criminal "shall … [m]ake *timely disclosure* to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigate the offense") (emphasis added); *see also* Rule 16-308(D) NMRA (same).

As a result, "it is essential that relevant evidence bearing on the credibility of" a critical witness "be timely revealed (1) to defense counsel as required by *Giglio*, and (2) to the ultimate trier of fact, unless clearly cumulative or attenuated." *United States v. Bernal-Obeso*, 989 F.2d 331, 335 (9th Cir. 1993).

**E.  The Government Must Produce Evidence Within Its Control.**

The government is not obligated to obtain or produce information outside its possession. *See United States v. DeLeon*, 2017 WL 2271430, at *49 (J. Browning) (D.N.M. 2017) (citing

collected cases in *United States v. Hykes*, 2016 WL 1730125, at **19-20 n.12). The requirement

that evidence be in a party's "possession, custody, or control" is not unique to criminal discovery,

as civil discovery resolves around similar concepts. *Id*. at *50. However, the trial courts in this

district apply "a pragmatic, functional test of that phrase." *Id*. According to Judge Browning: "If

the attorney responding to the requests for production can pick up the telephone and get the

information from a third-party, the documents are effectively in the responding party's 'control.'"

*Id*. Further, as the United States Supreme Court and Tenth Circuit have explained, for *Brady*

purposes, knowledge by one prosecutor is imputed to all other prosecutors in the offices. *See Smith*

*v. Sec'y of New Mexico Dept. of Corr*., 50 F.3d 801, 824 (10th Cir. 1995) ("The 'prosecution' for

*Brady* purposes encompasses not only the individual prosecutor handling the case, but also extends

to the prosecutor's entire office.") (quoting *Giglio*, 405 U.S. at 154). So, "while proof the

prosecutor had actual knowledge of the existence of the evidence at issue would be sufficient to

establish the suppression element of a *Brady* claim, such proof is by no means necessary." *Smith*,

50 F.3d at 825; *see also Duckworth*, 738 F.2d at 877-78 ("Although the prosecutor was more in

the dark than anyone else, that is not necessarily enough to relieve her of a *Brady* obligation; a

prosecutor's office cannot get around *Brady* by keeping itself in ignorance[.]"). Additionally, for

purposes of *Brady*, '[k]nowledge by police or investigators is ... imputed to the prosecution.'"

*Smith*, 50 F.3d at 824.

### III.    ARGUMENT

The Defendants are immediately entitled to alleged victim Brian Levi's carjacking

discovery in *United States v. Levi et al*., 22-cr-01910-JB, under Rule 16, *Brady* and *Giglio*, and

the Due Process Protections Act. There is no question that the government is in possession and

control of Brian Levi's discovery. There is also no question that Brian Levi's discovery is material

to the preparation of the Defendants' defenses at trial given the facts and circumstances of both cases and that the discovery contains evidence that will either be admissible under Federal Rules of Evidence 404(a) and (b). *See Graham*, 83 F.3d at 1474 (explaining that evidence is material under Rule 16 if it will play an important role in uncovering admissible evidence, aiding in witness preparation, or assisting in impeachment of a government witness).

In *United States v. Montelongo*, the Tenth Circuit acknowledged that:

> Rule 404(b) is typically used by prosecutors seeking to rely on a criminal defendant's prior bad acts as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in the crime charged. *The Rule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against him."* This type of evidence is often referred to as "reverse 404(b)" evidence.

420 F.3d 1169, 1174 (10th Cir. 2005) (emphasis added). Other courts of appeal have recognized that "the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when the prosecution uses such evidence as a sword." *United States v. Ballou*, 59 F. Supp. 3d 1038, 1052 (D.N.M. 2014) (quoting *United States v. Aboumoussallem*, 726 F.2d 906 (2dCir. 1984)). At trial, the "admissibility of reverse 404(b) evidence depends on a 'straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues.'" *Montelongo*, 420 F.3d at 1174. And that "a lower standard of similarity between the crime at issue and 'other crimes' evidence should govern 'reverse 404(b)' evidence because prejudice to the defendant is not a factor." *Id.* at 1174-75.

Here, there can be no dispute that Brian Levi's criminal discovery contains "reverse 404(b)" evidence. The government convinced a grand jury that there was probable cause for his indictment and a magistrate judge that the "[w]eight of evidence against" him was "strong," to

justify his detention pending trial. *See U.S. v. Levi*, 22-cr-01910-JB Indictment [Doc. 2]; Order of Detention Pending Trial [Doc. 18]. Accordingly, his criminal discovery must contain evidence of his "other wrongs, acts, or crimes." As noted above, the Tenth Circuit acknowledged in *Montelongo* that such evidence was admissible at trial when offered by the accused against a government witness. 420 F.3d at 1174. At a minimum, Brian Levi's criminal discovery – which surely implicates him a violent carjacking – would provide Defendants with information that will play an important role in uncovering admissible evidence.

Additionally, the government's boilerplate refusal to produce Brian Levi's criminal discovery to the defendants or shirk its responsibility to this Court for an *in camera* review is unacceptable. *See* **Ex. 2**, Email to AUSA McGinley 3/15/24. The American Bar Association sets out the government's ethical obligations to review and produce discovery, even when the production of such information may damage the government's case in Standard 3-5.4, which provides as relevant here, under "Standard 3-5.4 Identification and Disclosure of Information and Evidence," that:

(a) *After charges are filed if not before*, the prosecutor should diligently seek to identify all information in the possession of the prosecution or its agents that tends to negate the guilt of the accused, mitigate the offense charged, impeach the government's witnesses or evidence, or reduce the likely punishment of the accused if convicted.

…

(e) A prosecutor should timely respond to legally proper discovery requests, and make a diligent effort to comply with legally proper disclosure obligations, unless otherwise authorized by a court. *When the defense makes requests for specific information, the prosecutor should provide specific responses rather than merely a general acknowledgement of discovery obligations. Requests and responses should be tailored to the case and "boilerplate" requests and responses should be disfavored.*

…

(g) A prosecutor should not avoid pursuit of information or evidence because the prosecutor believes it will damage the prosecution's case or aid the accused.[1]

---

[1] Available at: https://www.americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/

If the government maintains that none of Brian Levi's discovery is discoverable, it should explain how and why this information – which appears to be classic reverse 404(b) evidence – is not actually material to the defense investigation. Any production and explanation as to why this information should not be disclosed is the government's responsibility. Defendants find little confidence that the government understands or is complying with its discovery obligations when its position is that the Court should conduct an *in camera* review of Brian Levi's criminal discovery and parse out what should and should not be produced to the defense. After all, the government, rather than this Court, is in the best position to determine whether its files contain *Brady*, *Giglio*, or Rule 16 materials. *See United States v. Roybal*, 46 F. Supp. 3d 1127, 1163 (D.N.M. 2014).

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 318 (1974). Part and parcel to this right is the right to test a witness's veracity by cross-examination. *Hoffa v. United States*, 385 U.S. 293, 311-12 (1966). Effective cross-examination is critical to a fair trial because "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis*, 415 U.S. at 316. The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Id*. at 316–17. Accordingly, jurors should have the benefit of the defense theory before them so that they can make an informed judgment as to the weight to place on the Government witness's testimony. *Id*. at 317. Cross-examination of the government witnesses in this case cannot be done consistent with the Sixth Amendment's requirements without counsel having access to the information sought herein.

In this case, before testifying at the Defendants' grand jury proceedings on September 6, 2023, Brian Levi faced federal carjacking charges and a potential maximum sentence of 25 years.

Miraculously, the government moved to dismiss the indictment against him several months after his appearance at the grand jury citing "recent developments" and its concern about its "ability to meet its burden of proof" on the carjacking charge. *See U.S. v. Levi*, 22-cr-01910-JB United States Unopposed Motion to Dismiss Indictment [Doc. 53]. Without access to Brian Levi's discovery, however, Defendants have no way to determine the strength of the government's case against him or what the "recent developments" were that lead to the dismissal of the indictment. Surely, the government would not have indicted Brian Levi without being confident in its ability to prove he committed the carjacking in Shiprock beyond a reasonable doubt. Defendants are permitted to determine the strength of the evidence against Mr. Levi in his similar criminal case which was haphazardly dismissed after his grand jury testimony in this case.

In addition, without this information about his criminal case, Defendants have no way to determine what his anticipated guideline range would be if convicted of the carjacking, which implicates his willingness to testify at the grand jury against the Defendants and whether he was incentivized by the belief that the government would take a more favorable view of his carjacking case and anticipated sentence.

Furthermore, the Fifth Amendment's Due Process Clause provides that defendants have a right to a fair trial, and essential to a fair trial is the right to present a defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 875(1982). The Sixth Amendment Compulsory Process Clause "establish[es], at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury, evidence that might influence the determination of guilt." *Pennsylvania v. Ritchie*, 480 U.S. 39, 56, 107 S. Ct. 989 (1987). The United States Constitution also "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690,

106 S. Ct. 2142 (1986) (internal citation and quotations omitted). The Due Process Clause of the Constitution requires the United States to disclose information favorable to the accused that is material to either guilt or to punishment. This includes the information at issue – Brian Levi's carjacking of John Doe less than a year before also stealing Seraphine's truck – which the government has refused to disclose.

**A. The Court Should Enter an Order Compelling the Government to Immediately Review and Disclose Brian Levi's Criminal Discovery.**

Brian Levi will have to testify at the Defendants' trial and the government should have already produced the information sought. Defendants have no way to effectuate their right to cross-examination and confrontation without this material. Moreover, as the government should well know, defense counsel will need time to review this material, conduct an independent investigation, and prepare for cross-examination. This is not material the government can simply dump on Defendants on the eve of trial, and it be used effectively. Accordingly, the Court should compel this information immediately and issue any other sanctions it deems appropriate. The Court has broad discretion to regulate discovery under Rule 16, which provides in relevant part that:

> [I]f a party fails to comply with [the] rule, the court may:
>
> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> (B) grant a continuance;
> (C) prohibit that party from introducing the undisclosed evidence; or
> (D) enter any other order that is just under the circumstances.

*See* Rule 16 Fed. R. Crim. P. In the event the Court  is unconvinced as to whether Brian Levi's discovery falls squarely into Rule 16, the Court should still compel its production because Rule 16 "leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." *United States v. Richards*, 659 F.3d 527, 543 (6th Cir. 2011).

The immediate production of *Brady* and *Giglio* discovery is likewise warranted should this Court conclude that the government failed to properly comply with *Brady*, to the prejudice of the Defendants, as the "district court has discretion to determine an appropriate remedy, whether it be the exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial." *United States v. Burke*, 571 F.3d at 1054. As the government has been warned in this case: failing to provide discovery of exculpatory evidence "in a timely manner may result in consequences, including but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court." *See* Discovery Orders [Docs. 11, 47].

The information sought, including the general discovery and any grants of immunity, cooperation agreements, promises and benefits provided, the pretrial services report, and other criminal history information will reveal not just any agreements Brian Levi has struck with the government and immediate promises and benefits provided – including the dismissal of the carjacking indictment – but also details about Brian Levi's criminal history, his exposure to a long sentence before and after testifying at the grand jury and other information that bears on the benefits the he may receive from testifying against the Defendants and that will likely lead to additional admissible information that will further the Defendants' investigation and implicates Brian Levi's credibility.

Defendants need this information in order to properly prepare to cross-examine Brian Levi and prepare a defense for Defendants. Despite the government's obligation to disclose this information under Fed. R. Crim. P. 16, *Brady*, and *Giglio*, the government failed to do so. This Court should enter an order for its immediate production.

## IV.    CONSULTATION WITH COUNSEL

Defense counsel has repeatedly consulted with counsel for the United States, Matthew McGinley, who indicates the government opposes the Defendants' request as indicated herein.

## V.    CONCLUSION

The discovery requested is material to the preparation of the defense and likely to be exculpatory or useful for impeachment. The government's possession, custody, and control of the requested materials is not in question, and it should be produced immediately.

If the Court denies any part of the Motion, Defendants respectfully request that the Court conduct an *in camera* review of Brian Levi's discovery on behalf of the government, to determine whether the government has complied with the Court's orders to produce Rule 16 and *Brady* and *Giglio* materials.

Respectfully submitted,
The Law Office of Ryan J. Villa

*/s/ Ryan J. Villa*
RYAN J. VILLA
Counsel for Defendant
5501 Eagle Rock Ave NE, Suite C2
Albuquerque, New Mexico 87113
(505) 639-5709
ryan@rjvlawfirm.com

*/s/ Justine Fox-Young*
Justine Fox-Young
5501 Eagle Rock Ave NE Ste C2
Albuquerque, NM 87113
(505) 796-8268
justine@foxyounglaw.com
*Attorneys for Seraphine Warren-Begay*

*/s/ Marc H. Robert*
MARC H. ROBERT
P.O. Box 25271
Albuquerque, New Mexico 87102
(575) 571-7435
m505robert@gmail.com
*Attorney for Josephine Bekay*

*/s/ Ahmad Assed*
AHMAD ASSED
Law Office of Ahmad Assed
818 5th Street NW
Albuquerque, NM 87102
(505) 246-8373
Ahmad@assedlaw.com
*Attorney for Nelton Alex Bekay*

*/s/ Susan L Burgess-Farrell*
SUSAN L BURGESS-FARRELL
Burgess & Porter LLC
400 Gold Ave, SW Suite 910
Albuquerque, NM 87102
(505) 433-5545
sburgess@burgessporterlaw.com
*Attorney for Orlando Begay*

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 20204, a copy of the foregoing document was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/Ryan J. Villa*
RYAN J. VILLA